## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **SHAUN HENDERSON, #R40853,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 15-00529-JPG** |
| | ) | |
| **KIMBERLY BUTLER, SUE HILL,** | ) | |
| **SALVADOR GODINEZ, LORI OAKLEY,** | ) | |
| **ALEX JONES, BRANDON ANTHONY,** | ) | |
| **G. HAYNES, L. PHELPS, DR. TROST,** | ) | |
| **INTERNAL AFFAIRS UNIT,** | ) | |
| **J. SHOENBECK,[1] VICKI PAYNE,** | ) | |
| **LINDA CARTER, J. HART, C. FLEMING,** | ) | |
| **K. BROOKMAN, PAT QUINN, T.S. KEEN,** | ) | |
| **WEXFORD HEALTH SOURCES, INC.,** | ) | |
| **ILLINOIS DEPARTMENT OF** | ) | |
| **CORRECTIONS, C. SUMNER,** | ) | |
| **and UNKNOWN PARTIES,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**GILBERT, District Judge:**

Plaintiff Shaun Henderson, who is currently incarcerated at Menard Correctional Center ("Menard"), brings this civil rights action pursuant to 42 U.S.C. § 1983. He is serving a 150-year sentence for murder. In the complaint, Plaintiff claims that he was unlawfully held in segregation for two false disciplinary tickets in 2013 and one false disciplinary ticket in 2014. He now sues twenty-one known and numerous unknown defendants for retaliating against him in violation of the First Amendment, subjecting him to cruel and unusual punishment in violation of the Eighth Amendment, and depriving him of a protected liberty interest without due process of

---

[1] Although this defendant is identified as "J. Shoen" in CM/ECF, the complaint identifies the defendant as "J. Shoenbeck." Therefore, the **CLERK** will be **DIRECTED** to change the name of this party to "J. Shoenbeck" on the docket sheet in CM/ECF.

law in violation of the Fourteenth Amendment.  He seeks monetary damages and injunctive relief.

The complaint is ripe for preliminary review pursuant to 28 U.S.C. § 1915A.[2] Under § 1915A, the Court is required to screen prisoner complaints to filter out nonmeritorious claims.  28 U.S.C. § 1915A(a).  The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief.  28 U.S.C. § 1915A(b).  Portions of the complaint survive preliminary review under this standard.

## The Complaint

The complaint (Doc. 1) focuses on events that occurred at Menard in 2013 and 2014, when prison officials discovered two cellular phones in Plaintiff's prison cell.  (Doc. 1, p. 6). Plaintiff and his cellmate were placed in segregation on May 4, 2013.  (*Id*.).  Officer Haynes issued each inmate a disciplinary ticket for possession of contraband ("first ticket").

At a disciplinary hearing before Menard's adjustment committee on May 7, 2013, Plaintiff's cellmate admitted that both phones were his.  Chairperson Veath and Officer Hart found Plaintiff not guilty of the rule violation and expunged his first ticket.  (*Id*.). Warden Harrington signed off on this decision.  (Doc. 1-1, p. 15).

---

[2] Plaintiff commenced this action in May 2015 without prepaying the $400.00 filing fee, despite having sufficient funds to do so.  Instead, he filed a complaint (Doc. 1), a motion for temporary restraining order and/or preliminary injunction (Doc. 2), and a motion for leave to proceed *in forma pauperis* ("IFP") (Doc. 3).  The Court immediately considered his request for a TRO, but found no basis for granting it. (Doc. 5).  The Court also denied Plaintiff's request for IFP status and ordered him to prepay the filing fee no later than June 18, 2015, or the action would be dismissed.  (Doc. 6).  Plaintiff asked the Court to reconsider its decision to deny his IFP motion.  (Doc. 7).  The Court denied the request on June 22, 2015, but granted Plaintiff additional time (until July 20, 2015) to pay his filing fee.   (Doc. 8). On July 14, 2015, Plaintiff filed a motion seeking a second extension of the payment deadline.  (Doc. 9). Before ruling on the motion, the Court received Plaintiff's full filing fee of $400.00.

Plaintiff received a second false disciplinary ticket on May 4, 2013, for "test[ing] positive for THC" ("second ticket").  (Doc. 1, p. 7; Doc. 1-1, p. 15).  Officers Anthony and Shoenbeck allegedly issued Plaintiff the ticket in retaliation for denying any knowledge of the phones.  (Doc. 1, 9).  When the results of his drug test came back negative, Chairperson Veath and Officer Hart again found Plaintiff not guilty of this rule violation.  They expunged the second disciplinary ticket.  Warden Harrington also signed off on the decision.  (Doc. 1-1, p. 15).

Plaintiff maintains that he should have been released from segregation as soon as the adjustment committee found him not guilty of the rule violations and expunged his first and second tickets on May 7, 2013.  (Doc. 1, pp. 8-9).  Instead, he remained in segregation for approximately seventy days.  (*Id*. at 29-30).  He was held in "disciplinary" or "temporary confinement" status until June 11, 2013.  His status was changed to "investigative" on June 11, 2013, and he was not released from segregation until July 11, 2013.  (*Id*. at 9, 11, 30).

During the investigation, Menard's Internal Affairs Unit informed Plaintiff that an officer was suspected of bringing the phones into the prison, and they "needed a name."  (*Id*.).  Plaintiff insisted that he knew nothing about the phones.  The Internal Affairs Unit officers did not accept this response and told Plaintiff that he was "going down hard [and] fast" for failing to cooperate with them.  (*Id*. at 7).

While in segregation, Plaintiff was placed behind a "steel door" in the "heart of the summer."  (*Id*.).  Temperatures regularly soared above ninety degrees.  For the first twelve days, Plaintiff was denied access to his fan, legal materials, bedding, clothing, and toiletries.  He was forced to sleep on a urine-stained mattress that caused him to break out in a rash.  His request for medical attention was denied.  He was also denied access to cleaning supplies.

Even after his status changed to "investigative," Plaintiff was denied access to audio-visual items.  (*Id.*).  His legal documents were removed from his property box.  (*Id.*).  His request for a prison transfer was denied.  (*Id.* at 14).  And he was permanently denied contact visits with several family members, who were accused of conspiring to bring contraband into the prison.  (*Id.* at 14-15).

Plaintiff wrote to Director Godinez, Warden Butler, Assistant Warden Jones, Counselor Payne, Counselor Sumner, Counselor Hill, and Officer Brookman to complain about his continued confinement in segregation, the conditions of his confinement, the denial of medical care, and harassment by prison officials.  (*Id.* at 10).  All of his grievances were ignored, destroyed, or denied.[3]  Sometimes, prison officials ripped up his grievances in his presence. Other times, he received the following response: "Offender failed to provide evidence to substantiate his claim of staff misconduct."[4]  (*Id.*).  No investigation was conducted into his complaints.  (*Id.* at 13, 16).

The investigation culminated in a search of Officer Fleming's home.  (*Id.* at 17). The officer blamed Plaintiff for this and targeted him for harassment.  In September 2014, Officer Fleming wrote Plaintiff a third disciplinary ticket ("third ticket") for unauthorized movement, disobeying a direct order, and rule violations, which Plaintiff claims was also false. (*Id.* at 36).  An emergency grievance that Plaintiff filed as an exhibit to the complaint indicates that he was found guilty of the third disciplinary ticket and punished with three months in segregation, following an unfair disciplinary hearing.  (Doc. 1-1, pp. 12-14).  Officer Fleming

---

[3] Plaintiff alleges that Menard employees adhere to the "blue code," which he describes as an unwritten policy of "stick[ing] together to protect one another" from allegations of misconduct by inmates. (*Id.* at 13).  Consistent with this policy, his grievances were destroyed, ignored, or denied.
[4] Plaintiff admits that he intentionally omitted the names of prison officials in grievances because he feared retaliation.  (*Id.* at 18).

also "threaten[e]d" Plaintiff and, along with Officer Smith, confiscated his identification card on two occasions. (*Id*. at 17).

Plaintiff now sues twenty-one known and numerous unknown defendants for retaliation under the First Amendment, cruel and unusual punishment under the Eighth Amendment, and the deprivation of liberty without due process of law under the Fourteenth Amendment. Plaintiff seeks monetary damages. He also seeks a prison transfer to avoid harassment and retaliation by Menard officials. Finally, he seeks the appointment of a hearing investigator to oversee the disciplinary ticket and hearing process at Menard.

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court has organized the claims in Plaintiff's *pro se* complaint into the following enumerated counts:

> **Count 1:** **Fourteenth Amendment claim against the defendants for depriving Plaintiff of a protected liberty interest without due process of law by placing him in segregation for approximately seventy days in 2013 for the first and second tickets;**
>
> **Count 2:** **Fourteenth Amendment claim against the defendants for depriving Plaintiff of a protected liberty interest without due process of law by placing him in segregation for approximately ninety days in 2014 for a third ticket;**
>
> **Count 3:** **Eighth Amendment claim against the defendants for subjecting Plaintiff to unconstitutional conditions of confinement in segregation from May 4 - July 11, 2013;**
>
> **Count 4:** **Eighth Amendment claim against the defendants for exhibiting deliberate indifference to Plaintiff's medical needs when he broke out in a rash in 2013;**
>
> **Count 5:** **Fourteenth Amendment claim against the defendants for mishandling Plaintiff's grievances;**

**Count 6:**    **Fourteenth Amendment denial of access to courts claim against the defendants for confiscating Plaintiff's legal papers and writing materials while he was in segregation;**

**Count 7:**    **Conspiracy claim against the defendants; and**

**Count 8:**    **First Amendment retaliation claim against the defendants for issuing Plaintiff a disciplinary ticket because of his participation (or lack thereof) in the cellular phone investigation.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.  The designation of these counts does not constitute an opinion regarding their merit.  Any other claim that is mentioned in the complaint but not addressed in this Order should be considered dismissed without prejudice.

As discussed in more detail below, **Counts 2, 3, 7,** and **8** shall receive further review. **Counts 1, 4,** and **6** shall be dismissed without prejudice for failure to state a claim upon which relief may be granted, and **Count 5** shall be dismissed with prejudice for the same reason.

**Counts 1 & 2 – Deprivation of a Protected Liberty Interest Without Due Process**

Standing alone, the receipt of a false disciplinary ticket does not give rise to a due process violation.  This is because "due process safeguards associated with prison disciplinary proceedings are sufficient to guard against potential abuses[,] [and a] hearing before a presumably impartial Adjustment Committee terminates an officer's possible liability for the filing of an allegedly false disciplinary report."  *Hadley v. Peters*, 841 F. Supp. 850, 856 (C.D. Ill. 1994), *aff'd*, 70 F.3d 117 (7th Cir. 1995) (citations omitted).

Due process safeguards that are associated with prison disciplinary hearings include: (1) advance written notice of the charges; (2) the opportunity to appear before an impartial hearing body to contest the charges; (3) the opportunity to call witnesses and present documentary evidence as a defense (if prison safety allows and subject to the discretion of

correctional officers); and (4) a written statement summarizing the reasons for the discipline imposed. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974). In addition, the decision of the adjustment committee must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395 (7th Cir. 1994).

But even if an inmate's due process rights are violated, he still may not have a Fourteenth Amendment claim. This is because an "inmate's liberty interest in avoiding segregation is limited." *Hardaway v. Meyerhoff, et al.*, 734 F.3d 740 (7th Cir. 2013) (quoting *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009)). A protected liberty interest arises only when Plaintiff's confinement in segregation "impose[s] an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Hardaway*, 734 F.3d at 743 (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). When making this determination, Courts consider "the combined import of the duration of the segregative [sic] confinement *and* the conditions endured." *Id*. at 743 (citing *Marion*, 559 F.3d at 697-98) (emphasis in original). Fourteenth Amendment due process protections are only triggered when the duration of confinement is sufficiently long and the conditions in segregation are particularly harsh. Against this backdrop, the Court will consider the merits of Counts 1 and 2.

<u>Count 1 – First and Second Tickets</u>

Plaintiff challenges his placement in segregation, following the issuance of two disciplinary tickets on May 4, 2013 (**Count 1**). Defendants Haynes, Anthony, and Shoenbeck issued the tickets. Following a hearing on May 7, 2013, Defendants Veath, Hart, and Harrison found Plaintiff not guilty of the rule violations and expunged both tickets. Despite this outcome, Plaintiff remained in segregation for a total of 68 days (*i.e.*, May 4 - July 11, 2013). He spent the first 38 days in "disciplinary" segregation (*i.e.*, May 4 - June 11, 2013). He spent the next 30

days in "investigative" segregation (*i.e.*, June 11 - July 11, 2013).  Plaintiff maintains that he endured conditions in segregation that fell below constitutional standards.

A liberty interest does not arise unless the length of confinement in segregation is substantial and the record reveals that the conditions of confinement are unusually harsh. *Marion*, 559 F.3d at 697-98, n. 2.  A term of segregation that is lengthy requires scrutiny of the actual conditions of segregation, whereas a shorter period of confinement may not.  *Id.* (citing *Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (analyzing conditions of confinement but noting that inmate's segregation "was still not so long as to work an atypical and significant hardship) (90 days); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1998) (holding that no liberty interest was implicated and noting "it was obviously a relatively short period when one considers his 12 year prison sentence") (approximately 70 days)).

Plaintiff's confinement in disciplinary segregation for 38 days qualifies as a short period of confinement and gives rise to no protected liberty interest under the Fourteenth Amendment.  The same can be said of his confinement in "investigative" segregation for 30 days, or, for that matter, the combined 68-day period of confinement in segregation.  The Constitution itself "does not create an interest in avoiding transfer[s] within a correctional facility."  *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (citing *Wilkinson v. Austin*, 545 U.S. 209, 222-24 (2005); *Meachum v. Fano*, 427 U.S. 215, 225 (1976)).  In fact, "inmates have no liberty interest in avoiding transfer[s] to discretionary segregation—that is, segregation imposed for administrative, protective, or investigative purposes."  *Sandin*, 515 U.S. at 483-84 (citing *Lekas*, 405 F.3d at 608-09 n. 4 ("[R]eassignment from the general population to discretionary segregation does not constitute a deprivation of a liberty interest.")); *Crowder v. True*, 74 F.3d 812, 815 (7th Cir. 1996).  Discretionary, or administrative, segregation is not considered

"atypical," but rather an "ordinary incident of prison life" that inmates should anticipate during their time in prison. *Townsend*, 522 F.3d at 771.

Given this precedent, the Court finds that Plaintiff's confinement in segregation following the issuance of the first and second disciplinary ticket triggers no due process protections.  And he complains of no due process violations associated with the hearing. Both tickets were expunged following a presumably fair hearing.  Accordingly, **Count 1** shall be dismissed without prejudice.  To the extent that any claim arises from Plaintiff's confinement in segregation in 2013, it should be addressed under the Eighth Amendment (*see* Count 3 below).

<u>Count 2 – Third Ticket</u>

**Count 2** shall receive further review.  Plaintiff claims that he was deprived of a protected liberty interest without due process of law when he was punished with 90 days in segregation for the false disciplinary ticket that he received from Defendant Fleming in September 2014. Plaintiff complains of numerous *Wolff* violations at the disciplinary hearing on the ticket. Among other things, he was allegedly denied the opportunity to testify or call witnesses. Although the complaint does not describe the conditions that Plaintiff endured in segregation during that 90-day period, the Court cannot dismiss this claim without further factual inquiry into those conditions to determine whether due process protections were triggered. Accordingly, **Count 2** shall proceed against Defendant Fleming, the only defendant named in connection with this ticket.  The claim shall be dismissed without prejudice against all other defendants.

**Count 3 – Conditions of Confinement**

The Eighth Amendment conditions of confinement claim (**Count 3**) against Defendants Godinez, Butler, Jones, Payne, Sumner, Hill, and Brookman shall also receive further review.

This claim arises from the conditions Plaintiff endured in segregation between May 4 and July 11, 2013.  Plaintiff allegedly notified each of these individuals about the conditions he faced, but maintains that they "turned a blind eye" to his complaints.

The Eighth Amendment prohibits cruel and unusual punishment and is applicable to the states through the Fourteenth Amendment.  It has been a means of improving prison conditions that were constitutionally unacceptable.  *See, e.g., Robinson v. California*, 370 U.S. 660, 666 (1962); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994).  Prison officials violate the Eighth Amendment when they show deliberate indifference to adverse conditions that deny "the minimal civilized measure of life's necessities," including "adequate sanitation and personal hygiene items."  *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation omitted)).

The Seventh Circuit has observed that "conditions of confinement may violate the Constitution in combination when they have a 'mutually enforcing effect that produces the deprivation of a single, identifiable human need.'"  *Budd*, 711 F.3d at 842 (quoting *Wilson v. Seiter,* 501 U.S. 294, 304 (1991); *see also Murphy v. Walker*, 51 F.3d 714, 721 (7th Cir. 1995)).  At this stage, the allegations in the complaint suggest that Plaintiff endured conditions in segregation in 2013 that may have violated constitutional norms.  However, the analysis does not end there.

In order to survive preliminary review on a claim of unconstitutional conditions of confinement, the complaint must also suggest that a particular prison official had a sufficiently culpable state of mind.  *Wilson*, 501 U.S. at 298.  The relevant state of mind is deliberate indifference to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the

inference.  *See, e.g., Farmer*, 511 U.S. 837; *Wilson*, 501 U.S. at 303; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Del Raine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994).  Plaintiff alleges that he notified Defendants Godinez, Butler, Jones, Payne, Sumner, Hill, and Brookman about the soaring temperatures, denial of a fan, issuance of a filthy mattress, resulting rash, and denial of clothing, bedding, hygiene items and cleaning supplies.  They neither looked into his complaints nor took any action to address the conditions.  At this early stage, the Court will allow Plaintiff to proceed with **Count 3** against Defendants Godinez, Butler, Jones, Payne, Sumner, Hill, and Brookman.  This claim shall be dismissed without prejudice against the remaining defendants.

**Count 4 – Deliberate Indifference to Rash**

The complaint articulates no Eighth Amendment deliberate indifference to medical needs claim (**Count 4**) against the defendants for failing to treat Plaintiff's rash.  The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment.  *Estelle*, 429 U.S. at 104; *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*).  To state a claim, an inmate must show that the: (1) medical condition was objectively serious, and (2) state officials acted with deliberate indifference to the inmate's health or safety, which is a subjective standard.  *Farmer*, 511 U.S. at 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001).  The complaint does not satisfy either requirement.

A serious medical need is one that is obvious to a lay person or one that has been diagnosed by a physician as requiring treatment.  *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).  The allegations do not suggest that Plaintiff's rash was serious. Beyond mentioning the condition, Plaintiff offers no additional information about it, such as the

size of the rash, the length of time he endured it, or other symptoms associated with it.  Given the lack of information, the Court cannot assess the objective seriousness of the condition.

Further, the Court cannot determine whether any particular defendant responded to Plaintiff's requests for treatment of the rash with deliberate indifference.  The complaint mentions no one in connection with this claim.  Therefore, the Court is unable to conclude that any particular defendant responded to Plaintiff's request for medical care with the requisite state of mind.  Under the circumstances, **Count 4** shall be dismissed without prejudice against all of the defendants.

### Count 5 – Mishandling of Grievances

The complaint also supports no Fourteenth Amendment due process claim (**Count 5**) against the defendants for mishandling Plaintiff's grievances.  Prison grievance procedures are not constitutionally mandated and thus do not implicate the Due Process Clause per se. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996).  Therefore, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n. 3 (7th Cir. 2008).  The Court finds no basis for allowing Plaintiff to proceed against anyone on this claim.  **Count 5** shall be dismissed with prejudice.

### Count 6 – Denial of Access to the Courts

The complaint also fails to articulate a claim against the defendants for denying Plaintiff access to the Courts (**Count 6**), based on the denial of access to his legal materials in segregation.  The Seventh Circuit uses a two-part test to decide if prison administrators have

violated the right of access to the courts. *Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004). First, the plaintiff must show that prison officials failed "to assist in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Jenkins v. Lane,* 977 F.2d 266, 268 (7th Cir. 1992) (quoting *Bounds v. Smith*, 430 U.S. 817, 828 (1977)).  Second, he must be able to show "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation." *Alston v. DeBruyn*, 13 F.3d 1036, 1041 (7th Cir. 1994); *see also Lehn*, 364 F. 3d at 868.  That means that a detriment must exist, a detriment resulting from illegal conduct that affects litigation.  It does not mean that any delay is a detriment. *Kincaid v. Vail*, 969 F.2d 594, 603 (7th Cir. 1992), *cert. denied*, 506 U.S. 1062 (1993).  Regardless of the length of an alleged delay, a prisoner must show actual substantial prejudice to specific litigation. *Id*. at 603.

The complaint does not meet these requirements.  Plaintiff mentions the temporary denial of access to writing materials and legal paper.  He also mentions the confiscation of legal documents.  But he draws no connection between this conduct and his ability to pursue a non-frivolous legal claim.  The complaint simply does not suggest that Plaintiff suffered substantial prejudice.  **Count 6** shall be dismissed without prejudice against all of the defendants.

## Count 7 – Conspiracy

With one exception, Plaintiff's catch-all conspiracy claim (**Count 7**) against the defendants is unsupported by the allegations in the complaint.  To state a conspiracy claim under § 1983, the plaintiff must plead conspiracy in some detail and provide some factual basis that supports the existence of a conspiracy. *Tarkowski v. Robert Bartlett Realty Co.*, 644 F.2d 1204, 1206-07 (7th Cir. 1980).  But "[m]ere conjecture that there has been a conspiracy is not enough

to state a claim." *Id*.  Plaintiff's allegations of a conspiracy are conclusory.

The only exception is Plaintiff's claim against Defendants Anthony and Shoenbeck for issuing Plaintiff the second ticket for use of THC, after he failed to provide them with information about the two cellular phones.  The allegations suggest that these two defendants reached an agreement to issue Plaintiff the false disciplinary ticket, knowing that he would not test positive for drugs.  At this stage, **Count 7** shall proceed only against Defendants Anthony and Shoenbeck.  It shall be dismissed without prejudice against all other defendants.

## Count 8 – Retaliation

Finally, Plaintiff's First Amendment retaliation claim (**Count 8**) shall receive further review against Defendants Anthony, Shoenbeck, and Fleming.  Plaintiff claims that each of these prison officials issued him a false disciplinary ticket because of his participation (or lack thereof) in the cellular phone investigation.  In the prison context, where an inmate is alleging retaliation, the inmate must identify the reasons for the retaliation, as well as "the act or acts claimed to have constituted retaliation," so as to put those charged with the retaliation on notice of the claim(s). *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).  The Plaintiff must have engaged in some protected activity, experienced an adverse action that would likely deter such protected activity in the future, and must allege that the protected activity was "at least a motivating factor" in the decision to take the retaliatory action.  *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009). The inmate need not plead facts to establish the claim beyond doubt, but need only provide the bare essentials of the claim, and in a claim for retaliation the reason for the retaliation and the acts taken in an effort to retaliate suffice.  *Id*. at 439.  The complaint satisfies minimum pleading standards for a retaliation claim against each of these three defendants.

However, the same cannot be said of the retaliation claim against any other defendant.

Although Plaintiff names numerous others in connection with this claim, he includes little more than conclusory allegations against them.  *See Brooks v. Ross*, 578 F.3d 574, 580-81 (7th Cir. 2009) (plaintiffs may not "merely parrot the statutory language of the claims that they are pleading (something that anyone could do, regardless of what may be prompting the lawsuit)" but must provide "some specific facts to ground those legal claims").  The complaint does not set forth a chronology of events suggesting that any other defendant actually took steps to retaliate against Plaintiff.  This includes the Internal Affairs Unit officers, who told Plaintiff that he would "go down hard [and] fast" for failing to provide information about the cellular phones; no allegations suggest that they ever took any action against Plaintiff after making the threats. (Doc. 1, p. 7).  This also includes the denial of contact visits with Plaintiff's siblings; here again, the complaint included insufficient allegations suggesting that these restrictions were placed on visits unjustifiably and for the purpose of retaliating against Plaintiff.[5]  **Count 8** shall proceed against Defendants Anthony, Shoenbeck, and Fleming and be dismissed without prejudice against the remaining defendants.

## Pending Motions

1.     **Motion for Preliminary Injunction (Doc. 2)**

Along with the complaint, Plaintiff filed a motion for a temporary restraining order ("TRO") and/or preliminary injunction.  (Doc. 2).  In the motion, he sought the appointment of a hearing investigator to oversee the disciplinary ticket and hearing process at Menard.  He also requested a prison transfer to avoid harassment and retaliation by Menard officials.  (*Id*. at 6).

---

[5] Plaintiff challenges the denial of contact visits on due process grounds as well.  However, a due process claim is unsupported by precedent.  *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454 (1989) (inmates did not have a due process liberty interest in visitation privileges); *Block v. Rutherford*, 468 U.S. 576, 589 (1984) ("[T]he Constitution does not require that detainees be allowed contact visits when responsible, experienced administrators have determined, in their sound discretion, that such visits will jeopardize the security of the facility.").

Because Plaintiff requested a TRO, the Court immediately considered the motion, but found no basis for granting him relief. *See Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680 (7th Cir. 2012). Accordingly, the Court denied Plaintiff's request for a TRO. (Doc. 5).

The Court now reaches the same conclusion regarding Plaintiff's request for a preliminary injunction. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). *See also Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013); *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007); *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999).

Plaintiff primarily challenges the disciplinary procedures at Menard. To be clear, he complains of three disciplinary tickets. The first two tickets were issued in 2013 and expunged following a *fair* disciplinary hearing three days later. The third ticket was issued in 2014 and resulted in punishment with ninety days in segregation. Plaintiff did not disclose more recent tickets. And the Court finds no basis for issuing a preliminary injunction because of one unfair disciplinary hearing that occurred more than a year ago. By all indications, Plaintiff was released from segregation after serving 90 days on the third disciplinary ticket. There is no present need, based on the motion and the complaint, for the Court to enter an interim order in this matter.

Plaintiff's request for a preliminary injunction in Document 2 is **DENIED**. However, the denial is without prejudice. Should Plaintiff deem it necessary to request interim relief during the pending action, he is free to file a new motion setting forth the reasons why he believes it is warranted.

2.      **Motion for Extension of Time to Pay Filing Fee (Doc. 9)**

Plaintiff's motion for extension of time to pay filing fee is hereby **DENIED** as **MOOT**. The Court has now received Plaintiff's full filing fee of $400.00.

3.      **Motion for Status Update (Doc. 10)**

Plaintiff's motion for status update (Doc. 10) is **GRANTED**.  This Order constitutes the Court's update on all pending matters.

4.      **Motion for Appointment of Counsel**

One of the exhibits to the complaint is a motion for appointment of counsel, which the **CLERK** is hereby **DIRECTED** to **DOCKET** in CM/ECF.  (Doc. 1-1, pp. 27-30).  This motion will be **REFERRED** to a United States Magistrate Judge for a decision.

<u>Disposition</u>

The **CLERK** is hereby **DIRECTED** to change the name of "J. Shoen" to "J. Shoenbeck" on the docket sheet in CM/ECF.  The Court and all parties shall now refer to this defendant as "J. Shoenbeck."

**IT IS ORDERED** that **COUNTS 1, 4,** and **6** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.   **COUNT 5** is **DISMISSED** with prejudice for the same reason.

**IT IS ORDERED** that Defendants **ILLINOIS DEPARTMENT OF CORRECTIONS, INTERNAL AFFAIRS UNIT, WEXFORD HEALTH SOURCES, INC., G. HAYNES, L. PHELPS, LORI OAKLEY, LINDA CARTER, J. HART, PAT QUINN, T. S. KEEN, UNKNOWN PARTY,** and **DR. TROST** are **DISMISSED** without prejudice from this action.

**IT IS ALSO ORDERED** that as to **COUNTS 2, 3, 7,** and **8**, the Clerk of Court shall prepare for Defendants **KIMBERLY BUTLER, SALVADOR GODINEZ, ALEX JONES,**

**BRANDON ANTHONY, J. SHOENBECK, VICKI PAYNE, SUE HILL, C. FLEMING, K. BROOKMAN,** and **C. SUMNER**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a **United States Magistrate Judge** for further pre-trial proceedings, including a decision on Plaintiff's motion for appointment of counsel.

Further, this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  November 5, 2015**              *s/J. Phil Gilbert*
                                         **U.S. District Judge**